IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRYANT COPELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:14cv223-MHT-TFM |
| | ) | (WO) |
| ARMY FLEET SUPPORT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

Plaintiff Bryant Copeland ("Plaintiff" or "Copeland"), a former employee of Army Fleet Support, brings this action *pro se* pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), asserting that he suffered discrimination and retaliation when he was suspended and subsequently terminated from his position as a technician.

This court has jurisdiction over the Title VII claims pursuant to 42 U.S.C. § 2000e-5.  Now pending before the court is the Motion for Summary Judgment filed by Defendant Army Fleet Support on February 6, 2014.  Doc. 34. The court has carefully reviewed the Motion, the supporting and opposing briefs, and evidentiary materials and concludes that the Motion for Summary Judgment is due to be GRANTED.

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is

properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the defendant's properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof

4

in a civil case. With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

Viewed in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the following facts are taken as undisputed for the purpose of summary judgment. Copeland has an associate degree in avionics from Ozark Community College. Doc. 36, Copeland's Dep., pp. 139-40.  In February 2010, Copeland began working for Army Fleet Support as an aircraft avionics, electrical, and instrument technician.  Doc. 1, p. 5; Attach. to Doc. 36, Dec. of Michael Lawson, p. 1.  Army Fleet Support is the primary contractor for helicopter maintenance and logistics for the United States Army at Fort Rucker, Alabama. Lawson Declaration, p. 1.  Shawn Baker ("Baker") was Copeland's supervisor between July 2012 and April 2013.  *Id*. at p. 2.

On December 6, 2012, Copeland was suspended from Army Fleet Support for five days.  *Id*.  The letter of suspension issued by Army Fleet Support summarizes the circumstances as follows:

> You are suspended, without pay, for five (5) days for violation of Company Work Rule[] #23, which reads, "Employees will not exercise poor judgment, carelessness, or negligence that causes substantial rework or has the potential of, or results in, damage or loss of government, company or other property," and #25, which reads, "Employees will not attempt to restrict output, refuse or fail to carry out a direct order or instruction, nor be insubordinate to employees in supervisory or management positions."
>
> Specifically, on November 29, 2012, you attempted to turn in the IETM checked out to you with the "V" key missing, at which time you were instructed that a ticket needed to be created in order for the IETM to be turned in.  Instead of accomplishing this task, you again tried to turn the

IETM in to supply, and then subsequently left work without getting a ticket or ensuring the IETM was ever turned in and accounted for.  Additionally, on December 5, 2012, while supervision was attempting to discuss your insubordinate actions with you, you stated that you again had an IETM in your possession that was also missing a key, yet you had not reported this discrepancy to anyone either.  Subsequently, the aircraft that you worked on during your shift had to be grounded for an FOD inspection.

You have been counseled previously regarding your attitude and work performance, and also have current active formal discipline regarding your attendance.  With the issuance of this discipline, you are in danger of violation of the Excessive Rules Violation clause of the AFS Work Rules and your employment status is in jeopardy.  Your continued and blatant disregard for rules, regulations, and safety procedures will not continue to be tolerated. . . .

Any further violation of Company rules, policies, or procedures or generally accepted workplace standards will subject you to continued disciplinary action, up to and including discharge.

Attach. to Complaint, *Letter of Suspension*, p. 30.

After February 28, 2013, management determined that the main problem with Copeland's work was his failure to complete assignments in a timely manner.  *Id.* Shortly after meeting with Baker about his work, Copeland met with AFS Field Manager Klaus Harris.  Lawson Dec. p. 2; Copeland Dep., p. 150-51.  During the meeting, Copeland complained to Harris that his coworkers treated him as if he were dumb and that he believed he was the subject of racial discrimination.  Copeland Dep., pp. 18, 24. Harris advised Copeland that he should keep a daily journal of events, study the work packages, and gain the respect of his coworkers by having a better understanding of the aircraft systems.  Lawson Dec., p. 5; Copeland Dep., pp. 33-34, 37-38.

On March 17, 2013, Copeland removed a "CDU" part from aircraft No. 2968 while conducing work on aircraft No. 4021 without reporting the removal in the laptop

computer assigned to the aircraft.  Copeland's failure to document the part removal resulted in the grounding of the aircraft.

Three days later, a maintenance pilot determined that the weight-on-wheel ("WOW") switch needed to be replaced and Copeland was assigned the task. Copeland Dep., pp. 81, 85-86, 88-89. Replacement of a WOW switch is projected to take approximately one hour to complete.  Copeland, however, failed to complete the task during his eight-hour shift.  Lawson Dec., p. 3; Copeland Dep., pp. 97-99.  Copeland alleges that he was unable to complete the task because (1) the job takes longer if only one person is assigned the task; (2) he was "stressed out"; and (3) he believed he needed to run the "APU" or troubleshoot several components before replacing the switch. Copeland Dep., pp. 81-82, 105-09.   Copeland's personal assessment was that the test pilot who entered the work order was incorrect and that the pilot should have ordered a different work package for a non-WOW switch or various other work packages.  *Id*., pp. 83, 85.  Copeland did not complete the task within his eight-hour shift.

On April 1, 2013, Army Fleet Support sent Copeland the following termination letter:

> You have been on unpaid suspension since March 28, 2013, and your employment is hereby terminated effective immediately for your second violation of Company Work Rule #25, which reads, "Employees will not attempt to restrict output, refuse or fail to carry out a direct order or instruction, nor be insubordinate to employees in supervisory or management positions."
>
> Specifically on March 20, 2013, at the beginning of shift you were given an assignment to adjust WOW switch, which is estimated to take approximately one hour.  You said you couldn't do the job because you could not run the APU and were subsequently shown in the work package

that the APU is not required.  You then came back and said the mechanic could not jack the aircraft on spot and management clarified that only one side needed to be jacked.  At that point, management specifically asked if you understand task, to which you replied "yes," did you have the work package, to which you also replied, "yes," and did you have tools for the job, to which you replied "yes, but need a ruler."  In total, you spent a full eight (8) hours on this job and at the end of your shift had not completed it, requiring that the job be turned over to next shift.

Attach to Doc. 1, p. 40.

Shortly after receiving the termination letter, a disciplinary hearing was conducted. Based on Copeland's statement that he did not remove the part from aircraft No. 2968 and that he was not assigned the laptop for the aircraft, the termination was tabled for further investigation to the following day.  Lawson Dec., p. 2.  The investigation indicated that Copeland had removed the CDU from aircraft No. 2968 in violation of federal regulations and AFS rules.  Copeland was terminated from his employment on April 2, 2013.  A grievance hearing was held of April 12, 2013, and his termination was upheld.  *Id*.

## IV.   DISCUSSION

### A.   The Wrongful Termination Claim

Copeland asserts that Army Fleet Support violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., by suspending and subsequently terminating him from his position on the basis of his race.   Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in a variety of employment practices.  *See Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).

In an employment discrimination case, the plaintiff bears the ultimate burden of proving intentional discrimination. *Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To defeat Defendant's Motion for Summary Judgment, Copeland must establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

Copeland presents no evidence of direct discrimination and does not rely on statistical proof for his claims. Because direct evidence of discrimination is difficult to produce, the Supreme Court in *McDonnell Douglas*, *supra*, created the now familiar framework for the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir 1984). To establish a prima facie case of wrongful discharge, a plaintiff must show (1) he is a member of a protected class; (2) he was qualified for the job from which she was discharged; (3) he was discharged; and (4) he was treated less favorably than a similarly situated person outside his protected class or his former position was filled by a person outside his protected class. *See, e.g., Maynard v. Rd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Army Fleet Support argues that Copeland fails to show that similarly situated persons outside of his protected class received more favorable treatment. Copeland alleges that he is similarly situated to one white male employee – Bill Elliot. Copeland

argues that Mr. Elliot also failed to report a missing computer keyboard key, but he was not suspended.  Army Fleet Support asserts that Mr. Elliot is not a proper comparator because there is no evidence that a helicopter was grounded as the result of the comparator's actions or that the comparator failed to write a ticket about the missing key after being instructed to do so.  In addition, there is no indication that management had knowledge of the incident.   Given these dissimilarities, Copeland's accusation of discrimination on this basis is insufficient to establish that both Copeland and Mr. Elliot were similarly situated.   Thus, Mr. Elliot is not a proper comparator in this case. Copeland also fails to identify any specific comparators who were not terminated for acts of insubordination based on the failure to complete a one-hour task during their eight-hour shift.

Even assuming *arguendo* Copeland established a prima facie case of racial discrimination, the court concludes that Army Fleet Support proffered a legitimate, non-discriminatory reason for terminating Copeland and that Copeland failed to demonstrate that the reason is pretextual.  Under the second prong of the McDonnell Douglas test, the burden shifts to Army Fleet to present a legitimate, non-discriminatory reason for Copeland's termination.  *McDonnell Douglas*, 411 U.S. at 802.   In this Circuit, "[t]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997).    "To satisfy [its] burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered

reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"  *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55).  This intermediate burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A*., 36 F.3d 1057, 1061 (11th Cir. 1994).  Army Fleet Support contends that Copeland was suspended because he violated the work rules by failing to report a missing laptop key which resulted in the grounding of an aircraft.  In addition, Defendant asserts that Copeland was subsequently terminated because he violated the work rules by failing to complete his one-hour work assignment during his eight-hour shift and for failing to document the removal and replacement of a CDU from an aircraft.  Army Fleet provides its reasons for requiring strict compliance with the work rules as follows:

> [g]iven the life and death consequences of aircraft maintenance, documentation of all maintenance performed on an aircraft is extremely critical.  To ensure that the maintenance is performed, each person who performs maintenance of any kind on an aircraft is required to document all aspects [of] the work performed (i.e., what part was inspected, what part was removed as part of that inspection, what tests were run, the results of the tests, the problems detected (if any), the prescribed solution, the parts removed permanently, the new parts added, etc.).  To ensure accuracy, each person who performs any such maintenance is required to sign off/certify his work, therefore documenting that the work was done and that the work was done correctly.

Def's Br., p. 11; Lawson's Dec., p. 2.  Thus, Defendant has articulated a legitimate, non-discriminatory reason for Copeland's suspension and subsequent termination.

Next, the court turns to whether Copeland has demonstrated that Army Fleet's legitimate non-discriminatory reasons for his termination is a pretext for discrimination.  Copeland argues that Defendant's reason for terminating him based on his failure to complete his assignment within his shift is a pretext for discrimination because he was

"set up to fail." Pl's Dep., p. 82. Copeland contends that he could not complete the work assignment in time because he was not assigned a partner to assist him and the pilot assigned him an incorrect work package. The problem with Copeland's argument is that it fails to explain why he was unable to complete the task assigned to him by his employer within his shift. In addition, there is no evidence indicating that the work package assigned to him requires two or more people to complete the task. Thus, Copeland fails to demonstrate pretext on this basis.

To the extent Copeland argues that his treatment by other employees is evidence of discriminatory intent, his argument is unavailing.[1] Copeland alleges that that some of the employees referred to him as "Tiger Woods" and other employees treated him like he was "stupid".[2] These reasons alone, however, are not evidence of discriminatory intent. *See Goff v. State Military Dep't*, No. 13cv60-MHT, 2014 WL 5112048, * 5 (M.D. Ala. Sept. 29, 2014) (no evidence of discriminatory intent where plaintiff alleged that "if [she] did not know the answer for something they spoke to [her] in a sarcastic way, like [she] was stupid for not remembering how to do something").

Copeland's argument that the defendant set him up for failure likewise fails to demonstrate pretext. The evidentiary materials indicate that Copeland was counseled by

---

[1] The Plaintiff's Complaint is not a model of clarity. To the extent his allegations concerning his treatment by other employees may be construed as a hostile work environment claim, the court concludes that the plaintiff fails to demonstrate a genuine dispute of material fact sufficient to overcome summary judgment. A plaintiff must establish that the harassment is sufficiently severe or pervasive "to ensure that courts and juries do not mistake ordinary socializing in the workplace . . . for discriminatory 'conditions of employment'" and to ensure that the courts are not creating a "general civility code." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). Nothing in the evidentiary materials indicates that the alleged harassment was so pervasive as to alter the conditions of the plaintiff's employment and create an abusive work environment.

[2] Defendant asserts that several employees have nicknames for each other and that another African-American employee gave Copeland the nickname. Jones' Dec., p. 3.

management to review the work manuals.  Although Copeland asserts that the job required two workers to complete, it is undisputed that the work package assigned to him indicated that the task should be completed by one person within an hour.  This court therefore concludes that the assignment of the task does not demonstrate discriminatory intent.

This Circuit has consistently held that federal courts, in resolving these types of claims, do not review the accuracy of an employer's decision to terminate a plaintiff's employment.  *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1321 n.16 (11th Cir. 1998), *quoting Nix,* 738 F.2d at 1187 ("Title VII is not a shield against harsh treatment at the workplace. . . The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").  Instead, the crucial question is whether the employer was motivated by an improper discriminatory bias.  *See, e.g., Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1333 (11th Cir. 1998); *Combs*, 106 F.3d at 1538.  The court concludes that there is no genuine dispute of material fact with respect Copeland's claim of race discrimination and that the Motion for Summary Judgment on the discrimination claims is due to be granted in favor of Army Fleet Support.

### B.    Retaliation

Copeland alleges that he was suspended and terminated from his position because he verbally complained about race discrimination to David Carpenter in 2010 and to Klaus Harris in 2013.

Employers are prohibited from discriminating against an employee who has either (1) opposed an employment practice made unlawful under Title VII or (2) made a charge, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, the plaintiff must demonstrate that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). The causal connection requirement must be construed broadly. *See generally E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993) ("A plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.").

The defendant does not dispute for purposes of the Motion for Summary Judgment that Copeland satisfies the first two elements of the prima facie case. Army Fleet Support argues, however, that Copeland's allegation that he was suspended in December 2012 because he complained of discrimination to Field Manager David Carpenter in December 2010 fails to establish a causal connection between the protected activity and the adverse employment action.

"[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Southwestern Medical Center v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2534 (2013). In *Byrne v. Alabama Alcoholic Beverage Control Board*, the

court generally summarized the connection between an adverse employment action and

protected activity as follows:

> A causal link can be established through evidence "'that the protected
> activity and the adverse action were not wholly unrelated.'" *Brungart v.
> BellSouth Telecomms., Inc*., 231 F.3d 791, 799 (11th Cir. 2000) (quoting
> *Clover v. Total Sys. Servs., Inc*., 176 F.3d 1346, 1354 (11th Cir. 1999)).
> "[T]o show the two things were not entirely unrelated, the plaintiff must
> generally show that the decision maker was aware of the protected conduct
> at the time of the adverse employment action," *id*., and that there is a
> "'close temporal proximity' between the protected expression and [the]
> adverse . . . action," *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.
> 2004) (quoting *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1180 n. 30
> (11th Cir. 2003)). Common sense dictates that the alleged adverse
> employment action must "follow[ ] the protected conduct." *Griffin v. GTE
> Fla., Inc.,* 182 F.3d 1279, 1284 (11th Cir.1999). Otherwise, it is impossible
> to prove "that 'the employer was actually aware of the protected expression
> at the time it took adverse employment action.'" *Id.* (citation omitted). As
> to temporal proximity, in this circuit, lapses of time of more than three
> months between the alleged adverse action and the employee's statutorily-
> protected activity uniformly have been found to be insufficient to
> demonstrate a causal connection, as required to establish a *prima facie* case.
> *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007)
> (three to four months); *Higdon,* 393 F.3d at 1221 (three months); *Grier v.
> Snow,* 206 Fed.Appx. 866, 869 (11th Cir. 2006) (eight months); *Hammons
> v. George C. Wallace State Cmty. Coll.,* 174 Fed.Appx. 459, 464 (11th
> Cir.2006) (five months). The Supreme Court of the United States also has
> observed that "[t]he cases that accept mere temporal proximity between an
> employer's knowledge of protected activity and an adverse employment
> action as sufficient evidence of causality to establish a prima facie case
> uniformly hold that the temporal proximity must be 'very close[.]' " *Clark
> County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149
> L.Ed.2d 509 (2001) (per curiam) (citation omitted). The Court opined that
> the alleged at-issue retaliatory action "taken ... 20 months later suggest[ed],
> by itself, no causality at all." *Id.*

635 F. Supp. 2d 1281, 1297 (M.D. Ala. 2009).

The length of time between Copeland's verbal complaint to Mr. Carpenter in 2010 and his suspension in 2012 is too attenuated to demonstrate any causal connection between the two events.  This court therefore concludes that Copeland has failed to demonstrate a prima facie case of retaliation on this basis.

Army Fleet also argues that Copeland has failed to demonstrate that it terminated him in retaliation for complaining to Mr. Harris about his treatment in the workplace. Specifically, the defendant contends that, even "[a]ccepting as true Copeland's claim that he complained to Harris about racial discrimination shortly before he (Copeland) was terminated, Copeland cannot show that he would not have been fired but-for the complaint."  Doc. 35, Def's Br., p. 28.  This dispute is not material because, even if the court were to conclude Copeland established a prima facie case of retaliation, his retaliation claim still fails.  Once the plaintiff demonstrates a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).  If the defendant offers a legitimate reason for the adverse employment action, the presumption of retaliation disappears.  *Id.*  The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for the prohibited retaliatory conduct. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  The defendant's stated reasons to terminate Copeland were violations of the work rules, including acts of insubordination, making false statements to management, and failing to document maintenance on an aircraft, are individually and collectively legitimate, non-retaliatory

reasons to fire Copeland.    As previously discussed, Copeland has failed to present evidence to rebut the defendant's reasons for terminating him.    This court therefore concludes that Copeland has failed to demonstrate a genuine dispute of material fact with respect to his retaliation claims.    Consequently, the Motion for Summary Judgment on the Title VII claims is due to be granted in favor of Army Fleet Support.

## V.  CONCLUSION

Accordingly, it is the

RECOMMENDATION of the Magistrate Judge as follows:

(1)     The Motion for Summary Judgment be GRANTED in favor of Defendant. Doc. No. 34.

(2)     This case be DISMISSED with prejudice.

(3)     The costs of these proceedings be taxed against Plaintiff.

Finally, it is

ORDERED that the parties shall file any objections to the said Recommendation on or before May 13, 2015.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.    Frivolous, conclusive or general objections will not be considered by the District Court.    The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the

District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of April, 2015.

_____/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE